OPINION JUDGMENT ENTRY
{¶ 1} On September 17, 1999, appellant, Phyllis Tuttle, was injured in an automobile accident caused by the negligence of appellee, Amy Campbell.
 {¶ 2} On August 30, 2001, appellant, together with her husband, Dennis Tuttle, filed a complaint against appellee, seeking damages for Mrs. Tuttle's injuries and Mr. Tuttle's consortium claim. Thereafter, appellant's insurance carrier, Erie Insurance Company, and appellant's health care plan, Merillat Industries Corporation Health Plan, were added as plaintiffs to protect their respective subrogation claims.
 {¶ 3} A jury trial commenced on August 27, 2003. Counsel for Erie and Merillat did not participate in the trial as stipulations were entered into between the parties on August 29, 2003. Erie had a $5,000 subrogation claim for medical payments and Merillat had an $11,291.63 claim for medical payments and a $3,726.43 claim for lost wages and disability. Appellee admitted to causing the accident and the case was submitted to the jury on the issues of proximate cause and damages. The jury found in favor of appellants, but awarded zero damages.
 {¶ 4} Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "The jury verdict was inadequate and against the manifest weight of the evidence."
 I {¶ 6} Appellants claim the jury verdict was against the manifest weight of the evidence. Specifically, appellants claim the jury erred in failing to award any damage amount for past pain and suffering and past medical expenses even though the jury found in their favor with a general verdict.
 {¶ 7} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson, 66 Ohio St.3d 610, 1993-Ohio-9. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Section 3, Article IV, Ohio Constitution.
 {¶ 8} Appellants point out every physician who testified opined that Mrs. Tuttle suffered some injury from the automobile accident. Appellee concedes that even her own medical expert opined Mrs. Tuttle "probably had the cervical and lumbar strain as a result of [the] accident," and this type of injury "will usually last, you know, three months, four months, five months at the outset." Glazer depo. at 39-40. However, appellee argues the jury was given no guidance in discerning what medical bills should be attributed from the date of the accident, September 17, 1999, to February 28, 2000. This matter is further compounded by an August 29, 2003 "joint stipulation" entered into between appellants and Merillat, outside the presence of the jury, relative to past medical bills and past lost wages:
 {¶ 9} "The sum of the verdict shall be determined based upon the answer of the jury as to the amount of their general verdict which is awarded for past medical expenses and which is awarded for past lost wages. The parties and this Court agree to submit the attached two jury interrogatory for determination of the amount awarded for past medical expenses and awarded for past lost wages.
 {¶ 10} "1) If you found for the Plaintiff Phyllis Tuttle and awarded her a general verdict. Please state the amount if any you are awarded in the general verdict to the Plaintiff Phyllis Tuttle for her past medical expenses which were proximately and directly caused by the auto accident of September 17, 1999.
 {¶ 11} "2) If you found for the Plaintiff Phyllis Tuttle and awarded her a general verdict. Please state the amount if any you are awarded in the general verdict to the Plaintiff Phyllis Tuttle for her past lost wages which were proximately and directly caused by the auto accident of September 17, 1999."
 {¶ 12} It is with these two interrogatories that the jury finds no past medical expenses or past lost wages. We are unable to discern if, in fact, the jury was aware of the reason for these interrogatories or of the joint stipulation because the trial court's final jury instructions were not prepared for the record. We note appellant complied with App.R. 9(B) by noting on the docketing statement that opening and closing arguments will not be included as part of the record. In the transcript at 197-198, the following exchange occurred between the trial court and appellant's attorney:
 {¶ 13} "THE COURT: One other thing. What do you want me to tell the jurors with regard to the subrogated medical claims?
 {¶ 14} "MR. MURRAY: Let me see the instruction — or your verdict. I don't mean instruction. I mean interrogatory. I think there should be some mention that there has been an agreement that those medical expenses were incurred. The defendant is going to object that they are necessary.
 {¶ 15} "THE COURT: Right.
 {¶ 16} "MR. MURRAY: But there's an agreement they were incurred. And it would depend upon what the jury finds if those are attributed to this accident.
 {¶ 17} "* * *
 {¶ 18} "THE COURT: The stipulation with regard to Erie has a paragraph that says the court shall instruct the jury, essentially, that Erie paid $5,000 in med payments, and if you find her medical expenses to be necessary and reasonable, then they are — then Erie gets that amount. That would be the same as to Merillat.
 {¶ 19} "MR. MURRAY: Same as the Merillat, sure. They are both medical plans.
 {¶ 20} "THE COURT: So you have the five and the eleven and the three thousand
 {¶ 21} "MR. MURRAY: Which is a disability payment.
 {¶ 22} "THE COURT: And then the two interrogatories, I ask them to —
 {¶ 23} "MR. MURRAY: Aren't those the same?
 {¶ 24} "THE COURT: Well, the one interrogatory deals with past medical expenses.
 {¶ 25} "MR. MURRAY: The other one is a wage disability?
 {¶ 26} "THE COURT: Wage, yes.
 {¶ 27} "MR. MURRAY: All right, fine.
 {¶ 28} "THE COURT: Any special instructions or just the standard ones on damages?
 {¶ 29} "MR. MURRAY: Standard ones on damages is fine."
 {¶ 30} In her direct examination, appellant admitted Erie paid her medical expenses ($5,000) and Merillat paid her medical expenses (some $11,000) and sent her disability pay ($3,400-$3,500) relative to her claim, and if she received damages, that amount was to be repaid. T. at 124-126.
 {¶ 31} The only medical bills in the record are Plaintiffs' Exhibit No. 5, an itemized account summary of James E. Lundeen, Sr., M.D., and Plaintiffs' Exhibit No. 2, attached to the deposition of Russell W. Pavkov, D.C. Neither of these medical providers treated appellant during the first five months after the accident.
 {¶ 32} Without closing arguments or a jury charge, we are unable to determine how the medical bills were presented to the jury. The "joint exhibits" of the parties consist of a detailed breakdown of appellant's treatment history, but contain no itemized medical bills. The entire transcript of the testimony of the witnesses for our review contains only four references to medical bills presented to the jury. T. at 78, 124, 125, 126.
 {¶ 33} Therefore, we find the jury did what only it could have done given the medical records presented. The jury could have accepted Dr. Glazer's assessment that Mrs. Tuttle's injury only lasted, at the outset, five months. There is also credible testimony from Mark C. Hatfield, M.D., a physician who first examined Mrs. Tuttle on January 28, 2000. Dr. Hatfield stated, "my impression on that day was, I dictated I was not able to confirm the diagnosis of fibromyalgia based on its definition, my second impression was she probably had cervical thoracic and probable lumbar strain as a result of trauma, and my third impression was that of — my third impression was that of depression. Hatfield depo. at 15. In fact, his treatment was to continue pain management medication. Id. at 19. During her second visit on February 25, 2000, Dr. Hatfield was still unable to determine the diagnosis of fibromyalgia. Id. at 21.
 {¶ 34} Because the record can arguably establish that Mrs. Tuttle was better in five months, and because the record does not delineate any medical bills for the first five months following the accident, we find the jury verdict was not against the manifest weight of the evidence.
 {¶ 35} The sole assignment of error is denied.
 {¶ 36} The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby affirmed.
By Farmer, J., Gwin, P.J. and Hoffman, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Ashland County, Ohio is affirmed.